**Affirmed and Opinion filed February 2, 2012.**



In The

# Fourteenth Court of Appeals
_____

## NO. 14-11-00175-CR
_____

**FLORENCIO HUERTA, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1215346**

## O P I N I O N

In this appeal, the only issue presented is whether appellant received ineffective assistance of counsel. We conclude he did not.

Appellant Florencio Huerta, Jr. was indicted on one count of robbery, alleged to have occurred in May 2009. A trial was conducted in February 2011, where appellant testified in his own defense, presenting a version of the facts that differed significantly

from that of other witnesses. The complainant testified that appellant and one other man stopped her at an intersection, demanding that she get out of her car. When she drove away, the complainant said that her assailants followed her into a residential neighborhood, where they blocked her off in the street and attempted to pull her out of the vehicle by her hair.

Appellant denied any sort of attack. He testified that the complainant's car collided with his own, causing slight damage to his bumper. He said that the complainant signaled for him to follow her onto a residential street so that they could exchange information. As they were meeting, appellant claimed that a man ran out of a nearby house, shouting and aiming a shotgun. Appellant testified that when the man shot at his back tire, the two cars made off in separate directions.

Appellant's testimony is the primary focus of this appeal, though he in no way challenges the sufficiency of the evidence to support his conviction. He argues that counsel's performance was constitutionally deficient because counsel permitted him to testify about other matters that never should have been introduced into evidence. Appellant specifically complains of the following acts and omissions: (1) that counsel elicited testimony of a prior conviction inadmissible under Rule 609 of the Texas Rules of Evidence; (2) that counsel allowed the prosecutor to elicit testimony, without objection, regarding the details of that earlier crime; and (3) that counsel opened the door to damaging testimony regarding appellant's membership in a local gang.

When appellant first took the stand, counsel began her examination by asking appellant to describe his criminal history. Appellant testified that he once served time in state jail for violating the terms of his probation. Appellant indicated that the underlying crime was a theft committed in the year 2000. Defense counsel also questioned appellant if, during the time of his incarceration, he had ever received any tattoos. Appellant answered affirmatively, stating that he was tattooed with the emblems of local sports teams,

2

including the Houston Rockets, Astros, and Texans. Appellant denied that his tattoos signified any type of gang affiliation.

On cross-examination, appellant admitted that the earlier theft case occurred in September 2001, instead of the year 2000. According to appellant, the trial court deferred adjudication of guilt, only to revoke his probation some years later. Although appellant could not recall the exact date of his probation revocation, his records indicated that he was convicted of theft in February 2006 and sentenced to fourteen months' confinement.

Details of the previous conviction were also elicited at trial. Appellant explained to the prosecutor that he was charged with a crime after he was involved in a fight following a trip to the car races. He testified that he punched another man who, he claimed, started running towards him and hitting him. Appellant denied that he ever threatened to kill or take any property from the other person. Nevertheless, appellant stated that he was charged with aggravated robbery, a charge later reduced to theft of a person.

After the defense rested, the prosecutor called a rebuttal witness, an officer from the Houston Police Department. The officer had been called previously during the State's case-in-chief, where he testified that he personally observed the robbery unfold. Upon his recall, the officer testified that, at the time of the offense, appellant was wearing a short-sleeved muscle shirt that revealed many of his tattoos. When appellant was eventually detained, the officer approached appellant to inquire whether he was "rolling with anyone," a phrase commonly used to denote whether a person is affiliated with any gangs. According to the officer, appellant responded by saying that he was a member of Tango Blast, a predominantly Hispanic gang in the Houston area. The officer testified that members of Tango Blast frequently display tattoos of the Houston Astros star. The officer explained that when he is confronted with a person bearing tattoos such as appellant's, he can reasonably deduce that the person is either "a really good sports fan or . . . affiliated with the Tango Blast gang."

3

Appellant insists that he was prejudiced by defense counsel's actions because the testimony she elicited, or otherwise allowed to be elicited, had the effect of tarnishing his credibility, which was a central issue at trial. We examine such claims of ineffective assistance of counsel under the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, appellant must prove that his trial counsel's representation was deficient, and that the deficient performance was so serious that it deprived him of a fair trial. *Id.* at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. This deficiency will only deprive appellant of a fair trial when counsel's performance prejudices appellant's defense. *Id.* at 691–92. To demonstrate prejudice, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the claim of ineffectiveness. *Id.* at 697. This test is applied to claims arising under both the United States and Texas Constitutions. *See Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986).

Our review of defense counsel's performance is highly deferential, beginning with the strong presumption that the attorney's actions were reasonably professional and were motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). In the majority of cases, the appellant is unable to meet the first prong of the *Strickland* test because the record on direct appeal is underdeveloped and does not adequately reflect the alleged failings of trial counsel. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007).

4

A sound trial strategy may be imperfectly executed, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State*, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), *overruled on other grounds by Bingham v. State*, 915 S.W.2d 9 (Tex. Crim. App. 1994). Moreover, "[i]t is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, to establish that the attorney's acts or omissions were outside the range of professionally competent assistance, appellant must show that counsel's errors were so serious that he was not functioning as counsel. *Patrick v. State*, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995).

### *Admission of Prior Conviction*

In his first of three complaints regarding counsel's representation, appellant argues that counsel was ineffective because she elicited testimony of an inadmissible conviction.

Eliciting testimony from the accused as to his own prior conviction can be a matter of sound trial strategy, if the prior conviction is admissible. *Martin v. State*, 265 S.W.3d 435, 443 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Indeed, it is common practice for defense attorneys to elicit such testimony because doing so removes the sting from an attack that would otherwise come from the state. *See Stone v. State*, 17 S.W.3d 348, 349 (Tex. App.—Corpus Christi 2000, pet. ref'd). If the prior conviction is inadmissible, however, there can be no reasonable trial strategy for introducing it before the jury. *See Robertson v. State*, 187 S.W.3d 475, 485–86 (Tex. Crim. App. 2006) (holding that counsel's performance was constitutionally deficient where counsel elicited testimony of two convictions that the state was barred from introducing for purposes of impeachment).

5

The question of admissibility is decided pursuant to the Texas Rules of Evidence and their interpretive cases. *See* Tex. R. Evid. 609; *Theus v. State*, 845 S.W.2d 874 (Tex. Crim. App. 1992). Rule 609 states that evidence of a prior conviction is admissible if its probative value outweighs its prejudicial effect. Tex. R. Evid. 609. The Rule also provides that such evidence is generally inadmissible if a period of more than ten years has elapsed since the date of conviction or the release from confinement for that conviction, whichever is later. *Id.*

Appellant contends that the evidence of his prior theft conviction was inadmissible because the criminal episode was too remote, happening "nearly ten years prior" to his testimony in this case. Under Rule 609, the test for remoteness turns upon the date of conviction or the date of release from confinement, not the date on which the crime was alleged to have been committed. *See id*. The record in this case shows that appellant was convicted of theft in February 2006, which falls well within the ten-year restriction of Rule 609. *See Jordan v. State*, 36 S.W.3d 871, 876 (Tex. Crim. App. 2001) ("Only upon revocation (i.e. adjudication of guilt) does a deferred adjudication become a conviction."). Therefore, evidence of the prior conviction was admissible if its probative value outweighed its prejudicial effect.

When weighing the probative value of a conviction against its prejudicial effect, we consider the following set of nonexclusive factors: (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus*, 845 S.W.2d at 880; *LaHood v. State*, 171 S.W.3d 613, 620 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Although these factors were enumerated in a case where the state was the proponent of impeachment evidence, courts have also considered them in situations where counsel has elected to preemptively elicit testimony of a prior conviction. *See, e.g.*, *Martin*, 265 S.W.3d at 442–45; *Denman v. State*,

193 S.W.3d 129, 135–37 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd); *Rodriguez v. State*, 129 S.W.3d 551, 558–60 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). The factors are applicable in this context because, if the evidence were admissible and the state were permitted to use it for purposes of impeachment, counsel would not be ineffective for deciding to blunt the effect of a prior conviction by discussing it candidly on direct examination. *See Martin*, 265 S.W.3d at 445.

I.  **Impeachment Value.** Crimes involving deception have a higher impeachment value than crimes of violence. *Theus*, 845 S.W.2d at 881. Theft is a crime of moral turpitude involving elements of deception. *Rodriguez*, 129 S.W.3d at 559. Though appellant was initially charged with aggravated robbery, a violent felony, he was ultimately convicted on a lesser charge of theft. Therefore, this first factor weighs in favor of admission.

II.  **Temporal Proximity.** The second factor will favor admission if the past crime is recent and if the witness has demonstrated a propensity for running afoul of the law. *Theus*, 845 S.W.2d at 881. The evidence showed that appellant committed the underlying theft in September 2001. His probation was revoked in February 2006, just over three years prior to the robbery allegedly committed in this case. The record also indicated that appellant was convicted in July 2005 of interfering with the duties of a public servant. Because these convictions are near in time to the charged offense, they demonstrate appellant's propensity to run afoul of the law. This second factor also weighs in favor of admission.

III.  **Similarity.** The third factor will militate against admission if the past crime and the charged offense are similar, but it will favor admission if the two are dissimilar. *Id.* The reasoning here is that the admission of a past crime similar to the one charged creates a risk that the jury could convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense. *Id.* Although theft is necessarily included in the elements of robbery, when, as here, the indictment alleges "in the course of committing theft," the

offense of robbery requires an additional element—bodily injury or the threat of imminent bodily injury or death. Consequently, this factor is neutral, weighing neither in favor of nor against admission of appellant's prior conviction. *Hayes v. State*, No. 14-10-00196-CR, 2011 WL 1581409, at \*2 (Tex. App.—Houston [14th Dist.] Apr. 21, 2011, no pet.) (mem. op., not designated for publication).[1]

**IV.    Defendant's Testimony and Credibility.** Factors four and five are related because both depend on the nature of a defendant's defense and the means available to him of proving that defense. *Theus*, 845 S.W.2d at 881. When the case involves the testimony of only the defendant and the State's witnesses, the importance of the defendant's testimony and credibility increases. *Id.* As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility. *Id.*

The defense relied solely on the testimony of appellant and one other witness, a homeless man washing car windows on the street corner. This other witness presented a version of the facts that was consistent in some ways with appellant's own account of the incident. However, his testimony was limited to an early stage of the robbery, when

---

[1] The courts of appeals have expressed differing positions regarding the similarity of robbery and theft. Some courts have noted that the two crimes can be dissimilar, such that the third factor weighs in favor of admission. *See Rodriguez v. State*, 129 S.W.3d 551, 559–60 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Morris v. State*, 67 S.W.3d 257, 264 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *Brown v. State*, Nos. 01-00-00920-CR & 01-00-00921-CR, 2001 WL 125938, at \*4 (Tex. App.—Houston [1st Dist.] Feb. 15, 2001, pet. ref'd) (not designated for publication); *Lowe v. State*, No. 01-93-00985-CR, 1995 WL 19052, at \*6 (Tex. App.—Houston [1st Dist.] Jan. 19, 1995, pet. ref'd) (not designated for publication). Others have held that the two crimes are similar, a consideration that weighs in favor of exclusion. *See Scope v. State*, No. 01-08-00824-CR, 2010 WL 3220627, at \*6–7 (Tex. App.—Houston [1st Dist.] Aug. 12, 2010, pet. ref'd) (mem. op., not designated for publication); *Jackson v. State*, No. 10-05-00040-CR, 2005 WL 3072913, \*2 (Tex. App.—Waco Nov. 16, 2005, no pet.) (mem. op., not designated for publication). This court, on two prior occasions, has found the third factor neutral when applied to such comparisons. *See Hayes v. State*, No. 14-10-00196-CR, 2011 WL 1581409, at \*2 (Tex. App.—Houston [14th Dist.] Apr. 21, 2011, no pet.) (mem. op., not designated for publication) (observing that robbery and theft are similar in some ways, though not exactly congruent); *Wilson v. State*, No. B14-93-00605-CR, 1995 WL 232744, at \*3 (Tex. App.—Houston [14th Dist.] Apr. 20, 1995, pet. ref'd) (not designated for publication). We conclude that even if the third factor were weighed in favor of exclusion, after all factors are considered, the decision to admit appellant's prior conviction would not lie outside the zone of reasonable disagreement.

appellant and the complainant met at the highway intersection. The uncontroverted evidence showed that appellant and the complainant drove into a residential neighborhood after their encounter in the intersection. The testimony from this other witness does not address any of the events that transpired here, all of which were central to the State's case-in-chief. Because appellant's version of these later events was uncorroborated, the importance of his testimony and credibility was high. Thus, these factors weigh in favor of admission.

Having considered the relevant factors, we conclude that the trial court would have acted within its discretion to admit appellant's prior conviction if the State had sought to use it for purposes of impeachment. Because his conviction would have been admissible, we hold that appellant has not overcome the presumption that trial counsel employed a reasonable strategy by eliciting testimony on this matter in an effort to portray appellant as truthful.

*Details of Prior Conviction*

In his second of three complaints, appellant argues that counsel was ineffective because counsel allowed the prosecutor to elicit the details of the earlier theft case. These details included testimony of the events preceding the offense, testimony regarding the offense itself, and testimony that appellant was first charged with aggravated robbery before he pleaded guilty to a lesser charge of theft.

It is true that the details of a prior conviction are generally inadmissible for impeachment purposes. *See Mays v. State*, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986); *Murphy v. State*, 587 S.W.2d 718, 722 (Tex. Crim. App. [Panel Op.] 1979). However, even if the scope of appellant's cross-examination was subject to a valid objection, appellant has failed to rebut the presumption that counsel was acting according to sound trial strategy.

Before being condemned as unprofessional or incompetent, counsel is normally afforded an opportunity to explain her actions, such as with a hearing on a motion for new

trial or with the filing of an affidavit. *See Bone*, 77 S.W.3d at 836; *Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). But appellant never filed a motion for new trial, and the record is likewise devoid of any explanation regarding counsel's reasons for not objecting to the prosecutor's questioning. In these circumstances, we will not conclude that counsel's performance was constitutionally deficient if any strategic motivations can be imagined for the challenged conduct. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Counsel may have decided to permit the challenged testimony in an effort to make appellant appear more honest and forthright, or perhaps to minimize the seriousness of the earlier offense. Counsel may have also decided to withhold objections to avoid drawing unwanted attention to a particular issue, or to prevent the impression that she was objecting at every opportunity as a means of stonewalling evidence. *See Bollinger v. State*, 224 S.W.3d 768, 781 (Tex. App.—Eastland 2007, pet. ref'd).

Because a reasonable strategy can be imagined for counsel's actions, we conclude that appellant failed to carry his burden of showing that counsel was ineffective by not objecting to the challenged testimony.

*Evidence of Gang Affiliation*

In his final complaint, appellant argues that counsel was ineffective because she opened the door to damaging character evidence. On direct examination, counsel asked appellant if he was a member of any gang. Appellant testified that he was not. When the State reopened its case, the prosecutor called a rebuttal witness who testified that appellant had admitted to being a member of the Tango Blast gang. The witness also testified that appellant's tattoos were consistent with affiliation with that gang.

Appellant contends that counsel's performance was constitutionally deficient because the State would have been barred from introducing this evidence, but for counsel's opening the door. *See* Tex. R. Evid. 402. As previously mentioned, though, the record is silent as to counsel's trial strategy. The record does not affirmatively show that counsel

10

knew appellant to be a gang member. The record also fails to reflect that counsel knew that appellant's tattoos were necessarily indicative of gang membership.

Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Because the record here is underdeveloped, we must presume that counsel's choice of questions was motivated by sound trial strategy. *See Strickland*, 466 U.S. at 689 (observing that a fair assessment of attorney performance must be made without the distorting effects of hindsight).

Appellant's sole issue is overruled, and the judgment of the trial court is affirmed.


/s/     Adele Hedges
Chief Justice


Panel consists of Chief Justice Hedges and Justices Jamison and McCally.

Publish — Tex. R. App. P. 47.2(b).