**Affirmed and Memorandum Opinion filed March 10, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-18-00390-CR

**CHRISTOPHER EDWARD HATFIELD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1577528**

## MEMORANDUM OPINION

We consider two issues in this appeal from a conviction for aggravated sexual assault of a child: first, whether the trial court abused its discretion when it denied a motion for new trial without having conducted an evidentiary hearing; and second, whether defense counsel was ineffective when counsel opened the door to testimony that appellant had committed extraneous bad acts. For the reasons explained below, we overrule both of these issues and affirm the trial court's judgment.

## BACKGROUND

When she was seven years old, the complainant and her two sisters were placed in the care of a distant relative, who was identified in the record as the children's aunt. Nearly a year after this placement, when she was about to turn eight, the complainant told her aunt about a disturbing dream involving appellant, who was her mother's boyfriend. The complainant said that, in this dream, appellant broke into the aunt's house and used his "privates" to "punch" the "privates" of the aunt's daughter. The term "privates" was a euphemism for genitalia. The aunt assured the complainant that her daughter was safe and that no such attack could happen because their home was protected by a security system.

The complainant then revealed to her aunt that she had already experienced a similar attack. The complainant said that, when she was living with her mother and appellant just a few years earlier, appellant used his privates to punch her in her privates. The complainant also said that appellant urinated on her and told her that he hated her.

The aunt reported the complainant's story to authorities, which eventually led to a criminal indictment. Appellant pleaded not guilty to the indicted offense, and during his trial, his defense counsel attempted to cast doubt on the prosecution's theory of the case. Counsel suggested that the complainant's allegation could not be believed because her outcry was delayed and there was no physical evidence. Counsel also challenged the credibility of the complainant, who testified that the sexual assault happened when she was three years old, which was inconsistent with the prosecution's theory that the assault happened when she was five or six. Counsel further suggested that a third party may have been responsible for the assault.

The jury rejected these defensive theories and convicted appellant as charged.

# MOTION FOR NEW TRIAL

After the conviction, the trial court appointed appellate counsel to replace trial counsel, who withdrew from the case. Appellate counsel then moved for a new trial, arguing that trial counsel had been ineffective.

The claim of ineffectiveness was not based on trial counsel's opening the door to evidence of extraneous bad acts, which we address in appellant's second issue on appeal. Instead, the claim of ineffectiveness was based on certain omissions, which were identified in the motion for new trial as follows:

> Trial counsel failed to properly advise [appellant] regarding his eligibility for community supervision, and the probability of the complainant testifying at trial. Trial counsel also failed to properly prepare for trial by . . . failing to obtain CPS records, and failing to hire an expert or request funds for an expert under *Ex parte Briggs*, 187 S.W.3d 458 (Tex. Crim. App. 2005).

The only evidence attached in support of the motion for new trial was an affidavit from the complainant's mother, who attested in material part as follows:

> 2.    Prior to trial, [trial counsel] told us that [appellant] was eligible for deferred adjudication. After [appellant] was found guilty, [trial counsel] asked the court to sentence [appellant] to deferred adjudication and the court told him it was too late.
>
> 3.    Prior to trial the attorney told us that we needed an expert witness. However we did not have the funds to get one. It is my understanding that he could have asked the judge for money to hire an expert even though he was a hired attorney. Yet he did not even file a motion asking the court about getting an expert.
>
> 4.    I do not believe the attorney prepared very well for trial. He did not get the CPS records, nor did he ever go over the video statements made by [appellant] and myself to the detective. I am not sure if he even looked at the CAC video. . . .
>
> 6.    At trial I was surprised that [the complainant] testified because [trial counsel] had told us she would not because she was too young.

Appellant requested the trial court to set his motion for a hearing, but the trial court denied the motion without having conducted any hearing at all. Appellant now complains in his first issue about the trial court's failure to conduct a hearing.

As a general rule, to be entitled to a hearing on a motion for new trial, the defendant must raise grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. *See Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). When, as here, the motion for new trial is based on allegations of ineffective assistance of counsel, this general rule requires the defendant to allege sufficient facts from which a trial court could reasonably conclude both that counsel failed to act as a reasonably competent attorney and that, but for counsel's failure, there is a reasonable likelihood that the outcome of the trial could have been different. *Id.* at 340–41. Whether the defendant has satisfied this burden is a question for the trial court to decide in the first instance, and we review that decision for an abuse of discretion. *Id.* at 339.

Appellant raised four allegations of ineffectiveness in his motion for new trial: first, that counsel failed to advise him about his eligibility for community supervision; second, that counsel failed to advise him about the probability of the complainant testifying at trial; third, that counsel failed to obtain CPS records; and fourth, that counsel failed to hire an expert or request funds for an expert. We address these allegations in reverse order because that is how appellant has presented them in his appellate brief.

Beginning with the expert point, appellant argues that he was entitled to a hearing because the affidavit testimony established that counsel never requested funds for an expert under *Ex parte Briggs*, 187 S.W.3d 458 (Tex. Crim. App. 2005). But this allegation of ineffectiveness was wholly unsubstantiated. Appellant did not identify in his motion what type of expert was needed for his defense, whether an

4

expert would have been available to testify on his behalf, or even how his defense could have benefited from the testimony of an expert. The complainant's mother likewise failed to establish such facts in her supporting affidavit. Without these explanations, appellant did not satisfy his burden of alleging sufficient facts from which the trial court could have reasonably concluded both that counsel's performance was deficient and that the deficient performance resulted in prejudice. *See Smith*, 286 S.W.3d at 339 ("Affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required."); *see also Jones v. State*, 500 S.W.3d 106, 116 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (the defendant failed to establish that counsel was ineffective by not engaging an expert witness where the defendant produced no evidence showing that an expert was available and that an expert could have offered beneficial testimony).

In his next point, appellant argues that the trial court should have conducted a hearing because the affidavit testimony established that counsel never obtained the CPS records or reviewed certain video evidence. But even if we assumed for the sake of argument that appellant alleged sufficient facts to show that counsel had not adequately prepared for trial, appellant still alleged no facts showing that he suffered any prejudice from counsel's deficient performance. There was no discussion in either the motion for new trial or the supporting affidavit about the contents of the CPS records or the video evidence. Nor was there any indication as to how counsel would have used such records and evidence had his preparation been more thorough. Because appellant did not establish any basis for showing that he was prejudiced, the trial court was not required to conduct a hearing on his claim of ineffectiveness. *See Smith*, 286 S.W.3d at 342 (the trial court did not abuse its discretion by denying a motion for new trial without conducting a hearing where the defendant made no

attempt to explain how the outcome of the trial would have been different but for counsel's alleged deficient performance).

Appellant argues next that he was entitled to a hearing because counsel erroneously advised him that the complainant would not testify during his trial. Once again, even if we assumed that this allegation was sufficient for the trial court to reasonably conclude that counsel's performance was deficient, appellant still neglected to address how he was prejudiced. Because he did not provide any factual basis from which the trial court could have concluded that the outcome of the proceedings would have been different but for counsel's erroneous advice, appellant did not establish that he was entitled to a hearing on his motion for new trial. *Id.*

In his final point, appellant argues that he should have received a hearing because of counsel's erroneous advice regarding his eligibility for deferred adjudication or community supervision. According to the supporting affidavit from the complainant's mother, counsel told appellant about his eligibility for deferred adjudication before the trial began, but when counsel requested deferred adjudication during the punishment phase of trial, the trial court responded that the request was too late. We conclude that no hearing was required to evaluate this claim of ineffectiveness because counsel's alleged request was never recorded in the official trial court transcript. Based on that omission, the trial court could have determined from the record that the alleged claim of ineffectiveness was false.

Appellant responds in his brief that the request may have occurred off the record. He then asserts:

> An out of time hearing on the Appellant's motion for new trial is needed to further develop the record to determine if trial counsel made this request off the record in some way and if the trial court told trial counsel it was too late as this may lead to a potential argument the trial court potentially failed to consider the full range of punishment and/or trial

counsel failed to object to the trial court not allowing him to argue for deferred adjudication.

This reasoning also fails. Hearings are not intended to be "fishing expeditions." *See Hobbs v. State*, 298 S.W.3d 193, 199 (Tex. Crim. App. 2009). And the trial court would not have needed a hearing if it could have relied on its own recollection to determine whether there was an off-the-record discussion. *See Holden v. State*, 201 S.W.3d 761, 764 (Tex. Crim. App. 2006) ("The judge was familiar with the history and facts of the case.").

Moreover, as with his other claims of ineffectiveness, appellant did not establish any facts in his motion or evidence that would support a finding that, but for counsel's alleged deficiencies, there was a reasonable probability that appellant would have received deferred adjudication or his punishment would have been different. Because appellant did not provide a sufficient basis to show that he was prejudiced, the trial court did not abuse its discretion by denying the motion for new trial without having conducted a hearing. *See Smith*, 286 S.W.3d at 345.

## EXTRANEOUS BAD ACTS

The complainant's older sister testified as a witness for the prosecution. On direct examination, the sister discussed her family's various living situations, how she and her siblings were removed from their mother's care by CPS, and how they were ultimately placed with their aunt. The sister testified briefly about appellant, saying that he was very controlling and that he and her mother openly had sex in front of the children.

On cross-examination, defense counsel asked the sister if appellant had ever sexually molested her. The sister responded that appellant had entered her bed one evening when he was naked and under the influence. The sister later added that appellant masturbated in front of the family on several occasions, and that he was

7

also prone to physically abusing the family. Because defense counsel had opened the door to these extraneous bad acts, the prosecution explored them in further detail upon redirect examination.

Appellant now complains that counsel was ineffective by opening the door to this evidence of extraneous bad acts. To prevail on this claim, appellant had the burden of proving that his counsel's performance was deficient, and that the deficient performance was so prejudicial that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need only address the performance prong, because the failure to establish either prong defeats the claim of ineffectiveness. *See Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

When assessing counsel's performance, we look at the totality of the representation and to the circumstances of the case, not to isolated instances in the record reflecting errors of commission or omission. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). We will only conclude that counsel's performance was deficient if it fell below an objective standard of reasonableness. *See Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). This is not a low threshold. Our review of counsel's performance is highly deferential, beginning with the strong presumption that counsel's decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Thus, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In this case, the record is silent as to counsel's reasons for questioning the sister. Though appellant moved for a new trial, he did not complain in his motion about counsel's opening the door to evidence of extraneous bad acts, and counsel never filed an affidavit explaining his cross-examination strategy.

On this silent record, we could only conclude that counsel's performance was deficient if his conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). That level of unreasonableness cannot be shown here. If counsel had been told by appellant that no extraneous sexual or physical abuse had occurred, counsel would have had a plausible basis for believing that his questions would not elicit an incriminating response. That would be reason enough to reject the claim of ineffectiveness. *See Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007) ("If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been grounded in legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal.").

There is also the possibility that counsel relied on the prosecution's pretrial notice of intent to use extraneous offenses, which omitted any mention that appellant had sexually molested the sister. Though the pretrial notice mentioned that appellant had indecently exposed himself to the sister and that he had physically abused her, counsel may have reasonably decided to elicit testimony about these extraneous bad acts because his questioning may have removed the sting from an attack that would otherwise come from the prosecution. *See Huerta v. State*, 359 S.W.3d 887, 891–92 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Appellant suggests that this strategy was unreasonable because the extraneous bad acts were inadmissible. But this argument fails to appreciate that the extraneous bad acts were admissible to rebut a theory of mistaken identity, which was one of appellant's defenses. *See* Tex. R. Evid. 404(b).

Based on the foregoing, we conclude that appellant failed to overcome the strong presumption that his counsel's performance was reasonable.

## CONCLUSION

The trial court's judgment is affirmed.

/s/      Tracy Christopher
            Justice

Panel consists of Justices Christopher, Bourliot, and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).